IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 7, 2021

**STATE OF TENNESSEE v. CALVIN SCOTT**

**Appeal from the Criminal Court for Shelby County
Nos. 99-03993, 99-03994, 99-03995, 99-03996, 99-03997
W. Mark Ward, Judge**

———————————————————

**No. W2020-01574-CCA-R3-CD**

———————————————————

The Appellant, Calvin Scott, appeals the Shelby County Criminal Court's denial of his motion to correct an illegal sentence pursuant to Tennessee Rule of Criminal Procedure 36.1. The Appellant also contends that the trial court had jurisdiction to address an issue regarding his pretrial jail credits and that the trial court should have recused itself from his case. Based upon our review of the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and JILL BARTEE AYERS, JJ., joined.

Terrell Tooten, Cordova, Tennessee, for the appellant, Calvin Scott.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Assistant Attorney General; Amy P. Weirich, District Attorney General; and Kirby May, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I. Factual Background**

On the afternoon of January 22, 1999, the then eighteen-year-old Appellant and James Kneeland entered Progressive Wheels, a wholesale wheel and tire business in Memphis. State v. Calvin Scott, No. W2002-01324-CCA-R3-CD, 2003 WL 21644414, at *1 (Tenn. Crim. App. at Jackson, July 8, 2003). Brian Petty, who was the manager of Progressive Wheels, John Paul Young, who was an employee, and Allan Bozarth were inside the business. Id. The Appellant and Kneeland used duct tape to bind the hands and

feet of the three men and demanded money from them.  Id.  During the robbery, the Appellant took several hundred dollars out of Petty's pocket, and "one of the robbers" shot Bozart and Young "in the head execution-style," killing them.  Id.  Petty was not harmed and identified the Appellant at trial.  Id.  Moreover, the Appellant gave a statement to the police in which he admitted that he was the shooter and that he took the victims' wallets and money.  Id.

In January 2002, a Shelby County Criminal Court Jury convicted the Appellant of two counts of first degree premeditated murder; two counts of especially aggravated robbery, a Class A felony; and one count of aggravated robbery, a Class B felony.  After the jury found the Appellant guilty of first degree murder, a separate sentencing proceeding was held in order for the jury to determine whether the Appellant would serve life or life without parole.  During the proceeding, the trial court instructed the jury that a defendant sentenced to life imprisonment would not be eligible for release until the defendant served at least fifty-one years of the sentence.  The jury sentenced the Appellant to life for each count.

On February 14, 2002, the trial court held a sentencing hearing on the remaining convictions and sentenced the Appellant to twenty-two years for each especially aggravated robbery conviction and nine years for the aggravated robbery conviction.  The trial court ordered that the Appellant serve the life sentences concurrently with each other and that he serve the sentences for the robbery convictions concurrently with each other but consecutively to the life sentences for a total effective sentence of life plus twenty-two years.  The trial court also ordered that the Appellant serve all of the sentences consecutively to a prior three-year sentence for aggravated assault because the Appellant was on bail for that offense when he committed the murders and robberies.  The trial court entered judgments of conviction that correctly reflected the Appellant's sentences.  The judgments also reflected that the Appellant was to receive 1,197 days of pretrial jail credits.

The Appellant filed a direct appeal of his convictions in this court, and this court affirmed the judgments of the trial court.  Id.  This court also affirmed the post-conviction court's denial of post-conviction relief.  Calvin Scott v. State, No. W2007-02051-CCA-R3-PC, 2009 WL 435339, at *1 (Tenn. Crim. App. at Jackson, Feb. 20, 2009).

On March 3, 2020, the Appellant filed a document titled "Motion to Correct Illegal Sentence."  In the motion, the Appellant requested that the trial court "correct the clerical errors and illegal sentence" pursuant to Tennessee Rules of Criminal Procedure 36 and 36.1, respectively.  Regarding the illegal sentence issue, the Appellant claimed that his life sentences were void due to an improper jury instruction regarding the amount of time he would have to serve in confinement before becoming eligible for parole.  Specifically, the Appellant contended that the trial court should have instructed the jury that he would have

to serve sixty years, not fifty-one years, before becoming eligible for release. The Appellant also claimed that pursuant to Blakely v. Washington, 542 U.S. 292 (2004), the trial court improperly enhanced his sentences and ordered consecutive sentencing. Finally, the Appellant claimed that his release eligibility date did not reflect his 1,197 days of pretrial jail credits and that the trial court should enter an order reflecting the pretrial jail credits he was to receive.

At a hearing on the motion, the Appellant testified that he had not received "any good time [credits]" since he had been in prison. He also did not receive the three years of pretrial jail credits that the trial court ordered. As a result, the records for the Tennessee Department of Correction (TDOC) showed that he was not eligible for release until 2082. The Appellant complained to prison counselors about his "time being incorrect" and submitted a written inquiry about the length of his sentences and his release eligibility to the TDOC. An employee from the TDOC's records department responded that "they [were] turning [the Appellant's] life sentence into a sixty-year sentence." The Appellant said that he "then figured out how the 82 came into existence is because they turned the life with parole sentence into 60 years and then added the 22 years on top of the 60 years and then made it just a flat out 82. That's where the 82 years come from."

The Appellant testified that the jury sentenced him to "life with parole" for the murder convictions. The Appellant thought the jury also was going to determine his sentences for the especially aggravated robbery convictions. However, the jury was not present when the trial court enhanced the Appellant's sentences for especially aggravated robbery to twenty-two years. Moreover, the jury did not make any findings regarding enhancement factors. The Appellant stated that he still did not know how many years he had to serve before being eligible for release but that his effective sentence was "supposed to expire" in 2082.

At the conclusion of the hearing, the trial court asked defense counsel to explain how the Appellant's sentences were illegal. Defense counsel responded that the jury requested that the Appellant receive a life sentence of fifty-one years, not sixty years, and that the jury's request "should have been honored." The trial court ruled that none of the Appellant's claims were colorable in a Rule 36.1 motion and denied the motion.

## II. Analysis

On appeal, the Appellant contends that his life sentences are illegal because they were "changed" from fifty-one years to sixty years and that his especially aggravated robbery sentences are illegal because the trial court enhanced the sentences and ordered consecutive sentencing in violation of Blakely. The Appellant also contends that the trial court should have addressed the issue regarding his not receiving his pretrial jail credits

and that the trial court should have recused itself from his case because the trial judge represented the Petitioner on direct appeal of his convictions. The State argues that the Appellant is not entitled to relief. We agree with the State.

Rule 36.1, Tennessee Rules of Criminal Procedure, permits a defendant to seek correction of an unexpired illegal sentence at any time. See State v. Brown, 479 S.W.3d 200, 211 (Tenn. 2015). "[A]n illegal sentence is one that is not authorized by the applicable statutes or that directly contravenes an applicable statute." Tenn. R. Crim. P. 36.1(a). As our supreme court has explained, only "fatal" sentencing errors render sentences illegal. State v. Wooden, 478 S.W.3d 585, 595 (Tenn. 2015). "Included in this category are sentences imposed pursuant to an inapplicable statutory scheme, sentences designating release eligibility dates where early release is statutorily prohibited, sentences that are ordered to be served concurrently where statutorily required to be served consecutively, and sentences not authorized by any statute for the offenses." Id. Conversely, "[c]laims of appealable error generally involve attacks on the correctness of the methodology by which a trial court imposed sentence." Id. Few appealable errors rise to the level of an illegal sentence. Id.

If a Rule 36.1 motion states a "colorable claim that the sentence is illegal," the trial court shall appoint counsel and hold a hearing on the motion. See Tenn. R. Crim. P. 36.1(b). Our supreme court has recognized that "Rule 36.1 does not define 'colorable claim.'" Wooden, 478 S.W.3d at 592. Nevertheless, the court explained that "for purposes of Rule 36.1, . . . 'colorable claim' means a claim that, if taken as true and viewed in a light most favorable to the moving party, would entitle the moving party to relief under Rule 36.1." Id. at 593. A motion filed pursuant to Rule 36.1 "must state with particularity the factual allegations on which the claim for relief from an illegal sentence is based." Id. at 594. In determining whether a motion states a colorable claim, the trial court "may consult the record of the proceeding from which the allegedly illegal sentence emanated." Id. Whether a Rule 36.1 motion states a colorable claim is a question of law, which we review de novo. Id. at 588.

Turning to the instant case, we do not think anyone "changed" the Appellant's life sentences from fifty-one to sixty years. Instead, the amount of time the Appellant must serve in confinement for a life sentence prior to becoming eligible for release is a matter of semantics. As this court has explained,

"The determinate sentence for a life sentence [imprisonment for life] is sixty years, as set forth in Tennessee Code Annotated section 40-35-501(h)(1)." Brown v. Jordan, 563 S.W.3d 196, 200 (Tenn. 2018). For first degree murder committed on or after July 1, 1995, as in the case sub judice, 100% of the sentence of sixty years must be served. . . . However, a person convicted of

a murder which occurs on or after July 1, 1995, and who receives a sentence of imprisonment for life, can be granted certain statutorily authorized "sentence reduction credits" up to nine years. [Tenn. Code Ann.] § 40-35-501(i)(1). Thus, if such an inmate obtains the maximum number of allowable sentence reduction credits, he will obtain credit for service of the entire sixty-year sentence after having been incarcerated for fifty-one years. See [Tenn. Code Ann.] § 41-21-236 ("'sentence credits' includes any credit, whether called that or not, that results in a reduction of the amount of time an inmate must serve on the original sentence or sentences.")

State v. Urshawn Eric Miller, No. W2019-00197-CCA-R3-DD, 2020 WL 5626227, at *12 (Tenn. Crim. App. at Jackson, Sept. 18, 2020).

Here, the life sentences that the jury imposed for first degree murder and that are reflected on the judgments of conviction were authorized by our Code and are not illegal. See Tenn. Code Ann. § 39-13-207(a)(1). Likewise, this court has held that "a Blakely violation would not render a judgment void and does not meet the definition of an illegal sentence under Rule 36.1." State v. Rafael Antonio Bush, No. M2016-01537-CCA-R3-CD, 2017 WL 2376825, at *7 (Tenn. Crim. App. at Nashville, June 1, 2017); see State v. Rodricus Antwan Johnson, No. W2018-00950-CCA-R3-CD, 2018 WL 6528698, at *3 (Tenn. Crim. App. at Jackson, Dec. 11, 2018).

As to the Appellant's complaint about his pretrial jail credits, our supreme court has held that a trial court's failure to award pretrial jail credits does not render a sentence illegal, and, therefore, does not warrant Rule 36.1 relief. Brown, 479 S.W.3d at 212-13. In any event, all of the judgments of conviction in this case reflect that the trial court awarded the Appellant 1,197 days of pretrial jail credits. Therefore, if the Appellant thinks that his sentences have been calculated incorrectly or disagrees with the TDOC's determination of his release eligibility date, the proper avenue for review is through the Uniform Administrative Procedures Act, not a Rule 36.1 motion. See Tenn. Code Ann. §§ 4-5-101 to -325.

Finally, the Appellant contends that in the event of a remand, this court should require that the trial court recuse itself from his case because the judge represented the Appellant on direct appeal of his convictions. As noted by the State, though, Tennessee Supreme Court Rule 10B, section 1.01, states that any party seeking recusal of a judge must do so by a written motion "filed promptly after a party learns or reasonably should have learned of the facts establishing the basis for recusal." The Appellant did not file a timely motion to recuse. Therefore, this issue is waived. See Tenn. R. App. P. 36(a).

### III. Conclusion

Based upon the record and the parties' briefs, we affirm the judgment of the trial court.

_____

NORMA MCGEE OGLE, JUDGE